Nina Sue CHAVERS, Individually and as Natural Guardian and Tutrix on behalf of her minor children, Michael Lee Chavers and Lori Ann Chavers, Plaintiff-Appellant,

v.

EXXON CORPORATION and Diamond M Company, Defendants-Appellees.

Fred WILLIAMS, Plaintiff-Appellant,

v.

DELTA CONSTRUCTION CO., INC., Defendant,

and

Texaco, Inc., Defendant-Appellee.

Nos. 81–3664, 81–3734 and 81–3692.

United States Court of Appeals, Fifth Circuit.

Oct. 3, 1983.

Uhalt & Reck, Gothard J. Reck, New Orleans, La., for plaintiff-appellant Chavers.

Weigand & Siegrist, Joseph J. Weigand, Jr., Houma, La., for defendants-appellees in Nos. 81–3664 and 81–3734.

Richard A. Weigand, New Orleans, La., for defendants-appellees in No. 81–3734.

Kernan A. Hand, Barry Sallinger, New Orleans, La., for plaintiff-appellant Williams.

Brian, Simon, Peragine, Smith & Redfearn, Daniel J. Caruso, New Orleans, La., for defendant-appellee Texaco, Inc.

Before CLARK, Chief Judge, THORNBERRY and POLITZ, Circuit Judges.

POLITZ, Circuit Judge:

These consolidated diversity cases occasion an examination and application of the statutory-employer provision of the Louisiana Workmen's Compensation Act, La.R.S. 23:1061. If defendants are deemed statutory employers, their responsibility for the injuries and losses at issue in these cases is prescribed exclusively by the Workmen's Compensation Act and they are shielded from all other liability.[1]

### Section 1061

The statutory-employee section, La.R.S. 23:1061, pertinently provides:

> Where any person (in this section referred to as principal) undertakes to execute any work, which *is a part of his trade, business, or occupation* or which he had contracted to perform, and contracts with any person (in this section referred to as contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him . . . . [Emphasis added.]

The statutory language vital to the current inquiry is found in the phrase: "part of his trade, business or occupation." We recently noted that for years this language "has been subjected to conflicting interpretations." *Penton v. Crown Zellerbach Corp.,* 699 F.2d 737, 740 (5th Cir.1983). Beginning with *Blanchard v. Engine & Gas Compressor Services, Inc.,* 613 F.2d 65 (5th Cir.1980), we have sought to minimize these conflicts.

In *Blanchard* we held the applicable yardstick to be:

> whether the activity done by the injured employee or his actual immediate employer is part of the usual or customary prac-

---

1. La.R.S. 23:1032 provides in pertinent part:

    The rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights and remedies of such employee, his personal representatives, dependents, or relations, against his employer, or any principal or any officer, director, stockholder, partner or employee of such employer or principal for said injury, or compensable sickness or disease. For purposes of this Section, the word "principal" shall be defined as any person who undertakes to execute any work which is a part of his trade, business or occupation in which he was engaged at the time of the injury, or which he had contracted to perform and contracts with any person for the execution thereof.

tice of the principal or others in the same operational business.

*Id.* at 71. By way of further explanation we stated that the court "should first consider whether the particular principal involved in the case customarily does the type of work performed by the contractor." *Id.* If that answer is in the affirmative, the principal is a statutory employer with resulting workmen's compensation obligations and a concomitant liability shield. If the answer is negative, the court must continue the inquiry "to determine if others engaged in businesses similar to that of the principal customarily do this type of work or if it is an integral part of their businesses." *Id.* If this query results in an affirmative response the principal is a statutory employer. In sum, the core inquiry is whether the employees of the principal or employees of other employers engaged in similar operations customarily perform the work at issue. In either instance, the principal will be deemed a statutory employer.

■ This test is essentially factual. "Typically, whether the work performed by the injured worker's employer is part of the trade or business of the ostensible statutory employer is an issue of fact to be determined according to the circumstances of each case." *Ortego v. Union Oil Company of California,* 667 F.2d 1241, 1242 (5th Cir. 1981). This does not preclude summary resolution, however, in a proper case.

In *Penton* we reflected on *Blanchard* and its progeny and held that "a statutory employment relationship will be found only in those instances where the injured employee's employer is contracted to perform work which is so closely allied to that of the principal employer that it is in fact either an extension or component of the principal's commonly relied upon resources." 699 F.2d at 741. In so observing, we made clear that we were not re-embracing the "essential to business" test specifically rejected in *Blanchard. Id.* at n. 5. *Penton* did not involve the more frequently posed § 1061 problem; the employees in *Penton* were

engaged in new construction and were not performing work inherent in the employer's operation. Nonetheless, the opinion is instructive and is a guide to our decision today.

In *Ortego* we examined workover operations by Union Oil Company of California. Similarly, in *Darville v. Texaco, Inc.,* 674 F.2d 443 (5th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 298, 74 L.Ed.2d 280 (1982), we considered the problem presented by ordinary maintenance. In each instance we found the work being done by the contractor's employees to be work customarily performed by the employees of the principal. Accordingly, the principal assumed statutory employer status with its resultant tort immunity. We upheld summary judgment for the defendants.

In *Williams v. Shell Oil Co.,* 677 F.2d 506 (5th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 570, 74 L.Ed.2d 933 (1982), which involved major repairs, we found summary judgment in favor of the defendant inappropriate. Affidavits of representatives of the principal attested to the fact that employees of the principal did not customarily perform the work in question. Indeed, the affidavits informed that "it is customary within the petroleum refining industry to employ independent contractors" to do that work. *Id.* at 509–10. Under those circumstances, we concluded that we could not hold as a matter of law that the statutory employer status governed the case.

Recently, in *Forno v. Gulf Oil Corp.,* 699 F.2d 795 (5th Cir.1983), we found the employees of a painting contractor to be statutory employees of the principal despite the fact that at the facility in question the principal generally contracted for painting services. The evidence reflected that at its other plants throughout the country, Gulf Oil often utilized its own employees for painting maintenance; indeed, at one facility it used its employees exclusively for such maintenance. Summary judgment in favor of defendant, dismissing plaintiff's tort claim, was affirmed.[2]

---

**2.** *See also Blanchard v. Gulf Oil Corporation,* 696 F.2d 395 (5th Cir.1983) (the principal sup-

The fact that most contests over statutory-employee status occur in the context of third-party liability claims can be misleading. The purpose of the statutory-employee provision is to assure complete compensation coverage. That it affects tort liability is incidental. As earlier noted, an integral part of making employees of individual contractors (who might not be able or willing to provide coverage) the employees of the principal for compensation purposes is the insulation of the principal from third-party liability for any injury sustained. The decision to so structure the law was a conscious legislative act.

Against this backdrop, we turn to the cases before us today.

### Chavers v. Exxon

■ Nina Sue Chavers, widow of Max L. Chavers, individually and on behalf of two minor children, brought an action against Exxon because of the death of her husband. Max Chavers, employed as a roustabout by Diamond M Company, sustained fatal injuries while working as a member of a drilling crew on a self-contained platform rig owned and operated by Diamond M on location in state waters off the coast of Louisiana. At the time of the accident, Diamond M was under contract with Exxon to drill and complete wells in the Gulf of Mexico. Exxon moved for summary judgment, claiming statutory employer status with its consequential tort immunity. The motion was granted; Chavers' demands were rejected.

The statement of undisputed facts refers to an attached affidavit in declaring that "Exxon's trade business and occupation is the location, production and sale of oil and gas." The referenced affidavit merely attests that "Exxon Corporation and its division Exxon Company, USA are engaged in the exploration, drilling and production of oil, gas and natural resources from the Gulf of Mexico ..." and that Diamond M had contracted "to drill and complete wells" in certain areas of the Gulf of Mexico.

The affidavit offers no enlightenment whether Exxon, and other like oil companies, customarily undertake drilling operations with their own employees or whether they customarily contract for such services. This information is essential to a proper disposition of the motion for summary judgment. If in fact both Exxon and the industry as a whole customarily contract with others for drilling operations, then such operations are not part of Exxon's "trade, business, or occupation" within the meaning of § 1061. In that instance, Exxon would not be Chavers' statutory employer and would not have tort immunity. On the other hand, if it be shown that either Exxon or its industry counterparts customarily assign employees to drilling operations, then Exxon would be the statutory employer of Diamond M's employees and would not be liable in tort. On the record before us, this determination cannot be made. The record reflects a genuine issue of material fact. Summary judgment was improvidently granted; that judgment is vacated and the matter is remanded for further proceedings consistent herewith.

### Williams v. Delta

■ Fred Williams, an employee of Delta Construction Company, Inc., was injured when a scaffold on the compressor station VIETTI, owned by Texaco, Inc., broke and caused his fall into the Gulf of Mexico. Delta had contracted with Texaco to provide maintenance and repair services to the compressor station. The district court granted Texaco's motion for summary judgment dismissing Williams' complaint, premised on Texaco's claim that it was Williams' statutory employer.

---

ported its successful motion for summary judgment with affidavits to the effect that its own employee-mechanics were qualified to and did perform the same maintenance work as that in which the subcontractor's employee was injured); *Barrios v. Engine & Gas Compressor Services, Inc.,* 669 F.2d 350 (5th Cir.1982);

*Freeman v. Chevron Oil Company,* 517 F.2d 201 (5th Cir.1975); *Thompson v. South Central Bell Company,* 411 So.2d 26 (La.1982); *Duvall v. Lake Kenilworth, Inc.,* 396 So.2d 1268 (La. 1981); *Barnes v. Sun Oil Company,* 362 So.2d 761 (La.1978).

Williams was employed as a sandblaster-painter's helper when assigned by his employer to sandblast and paint on the compressor station VIETTI. In support of its motion, Texaco attached an affidavit of its District Gas Supervisor in its Houma, Louisiana office. That affidavit states:

That Texaco USA regularly employs on its payroll operators, roustabout laborers and mechanics to perform daily, necessary, routine maintenance on its production facilities, including compressor stations;

That sandblasting and painting are also an integral part of the maintenance of gas production facilities such as compressor stations which require sandblasting and painting every three to six years because of their exposure to the elements (which most companies contract to Delta and others);

That Texaco USA regularly retains the services of independent sandblasting contractors to perform sandblasting and painting when needed; and

That the necessity of sandblasting and painting is such that if there were no independent sandblasting companies, Texaco would have to use its own employees and laborers to work as sandblasters and painters in order to insure proper maintenance of its production facilities.

In the statement of facts in support of its motion, Texaco states: "Most oil companies do in fact contract sandblasting and painting to specialty companies such as Delta." There are oblique references but no specific statement as to whether Texaco employees customarily sandblast and paint. The evidence in the record before us does not definitively establish that the employees of Texaco or its industry counterparts customarily performed the sandblasting and painting work for which Texaco contracted with Williams' employer. This is an essential finding for if in fact Texaco and the other oil companies customarily contract for the specialty services of sandblasting and painting, such work would not be part of Texaco's "trade, business or occupation" within the intendment of § 1061. In that circumstance, Texaco would not be liable for workmen's compensation benefits and would have no immunity from tort liability as Williams' statutory employer. The record before us will not support the finding that Texaco employees customarily did sandblasting and painting such as that undertaken by Williams or that other similar oil companies customarily assigned such duties to its employees. Absent those undisputed findings, summary judgment premised on § 1061 was inappropriate. That judgment is vacated and the matter is remanded for further proceedings consistent herewith.

Summary judgment in each of the two consolidated cases is VACATED and the cases are REMANDED.