Harrell R. SMITH, Plaintiff-Appellant,

v.

MOBIL CORPORATION and Fidelity Union Bank, Defendants-Appellees.

No. 83–4182.
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Nov. 21, 1983.

---

Kimball, McLeod & Dow, G. Allen Kimball, Lake Charles, La., for plaintiff-appellant.

Camp, Carmouche, Palmer, Barsh & Hunter, Randy J. Fuerst, David R. Frohn, Geralyn P. Garvey, Jack G. Wheeler, Lake Charles, La., for defendants-appellees.

Before BROWN, TATE and HIGGINBOTHAM, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

In this Louisiana diversity case arising out of the series of tender offers which preceded the 1982 Marathon Oil Co.-U.S. Steel buy-out, Harrell Smith appeals the District Court's grant of summary judgment in favor of appellees Mobil Oil Co. and Fidelity Union Bank. Because we find Smith's claims to be without merit, we affirm.

### Facts

The parties do not dispute the underlying facts of this case. On October 30, 1981, Mobil issued an initial Tender Offer for the purchase of up to 40,000,000 shares of Marathon Oil Co. stock at a price of $85 per share. Tendered shares were to be delivered to Mobil's depositary Fidelity Union Bank, in Newark, New Jersey. Mobil's offer included a provision allowing the withdrawal of tendered shares prior to December 1, 1981. The Tender Offer Prospectus also included provisions requiring that both stock tenders and tender withdrawals be acknowledged by guaranteed signature.[1]

---

1. The provision requiring a guaranteed signature for tender offers appeared on the first page of the Tender Prospectus, as follows:

   IMPORTANT

   Any shareholder desiring to tender all or any portion of his Shares should either (1) request his broker, dealer, commercial bank, trust company or nominee to effect the transaction for him or (2) complete and sign the Letter of Transmittal or a facsimile thereof, have his signature thereon guaranteed if required by Instruction 1 of the Letter of Transmittal and forward the Letter of Transmittal with his stock certificate(s) and any other required documents to the Depositary or the Forwarding Agent. Shareholders having Shares registered in the name of a broker, dealer, commercial bank, trust company or other nominee must contact such person if they desire to tender such Shares.

   The provision requiring the same guarantee for withdrawal of tendered shares appeared on page 4 of the Prospectus, as follows:

   3. Withdrawal Rights.

   \* \* \* \* \* \*

   ... the signatures on the notice of withdrawal must be guaranteed by a member firm of a registered national securities exchange or a member of the National Associa-

On November 19, 1981, Mr. Smith tendered 600 shares of Marathon stock to Fidelity Union Bank in response to Mobil's offer, fully complying with the guaranteed signature provision. Subsequently, United States Steel Corporation (U.S. Steel) issued a second Tender Offer for the purchase of 51% of the outstanding Marathon shares at a price of $125 per share. To take advantage of the higher offer, Mr. Smith decided to withdraw the shares he had tendered to Mobil. His letter requesting that Fidelity return the tendered stock certificate, however, did not include a guarantee of signature. Fidelity, therefore, did not return the shares in time for Mr. Smith to take advantage of U.S. Steel's higher offer.[2] Mr. Smith, a retired corporate executive and an experienced investor, does not deny that he was aware of the provision requiring a guaranteed signature for withdrawal. His failure to comply with the provision was due, he states, to his concern that waiting another day to obtain the guarantee might cause his letter to be delayed in the mail and arrive too late to meet the December 1 withdrawal deadline. Furthermore, Mr. Smith decided that a guaranteed signature was unnecessary in view of the fact that Fidelity already had his guaranteed signature on the Tender form and thus could have compared the two signatures.

Smith contends on appeal that the guarantee provision renders the Tender Agreement a contract of adhesion and that Fidelity's adherence to it constituted an Abuse of Right. Moreover, he urges, the agreement must be construed against Mobil as the obligor and the preparer. In support of these claims, Smith contends that the requirement of a guaranteed signature on a request for withdrawal of tendered stock is for the benefit of the bidder—in this case, Mobil.

*Summary Judgment*

We recognize that summary judgment is appropriate only when "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." F.R.Civ.P. 56(c). The burden of proving that there is no issue of material fact is on the proponent of the motion, and the District Court may only grant the motion after drawing all inferences from the facts in favor of the party resisting the motion. *Boazman v. Economics Laboratory, Inc.,* 537 F.2d 210, 213–14 (5th Cir.1976), *United States Steel Corp. v. Darby,* 516 F.2d 961, 963 (5th Cir.1975). In cases where this burden is met, "[s]ummary judgment is an excellent device by which district courts may make expedited dispositions of those cases in which a trial would be fruitless." *Gordon v. Watson,* 622 F.2d 120, 123 (5th Cir.1980).

In this case, Smith's proposed question of fact is apparently whether execution of the withdrawal request without the guaranteed signature should have been legally honored by Fidelity for any of the reasons he raises on appeal. In our view, however, this is not a material question of fact, but an issue " 'whose resolution requires "the application of legal principles to specific underlying facts." ' " *Bertrand v. Int'l Mooring and Marine, Inc.,* 700 F.2d 240, 244 (5th Cir. 1983), *quoting Ardoin v. J. Ray McDermott & Co.,* 641 F.2d 277, 280 (5th Cir.1981), *quoting Longmire v. Sea Drilling Corp.,* 610 F.2d 1342, 1345 (5th Cir.1980). Summary judgment is appropriate in cases "where the underlying facts are undisputed and the record reveals no evidence from which reasonable persons might draw conflicting inferences about these facts." *Bertrand, supra,* at 244. Thus, because there is no dispute as to the underlying facts in this case, and because no conflicting inferences can be drawn from those facts, we conclude that the grant of summary judgment was proper

tion of Securities Dealers, Inc. or by a commercial bank or trust company having an office or correspondent in the United States (an "Eligible Institution") prior to the release of withdrawn Shares.

**2.** Fidelity returned Smith's certificate when Mobil did not receive tenders for the requisite 30,000,000 shares. Smith was then able to sell his shares to U.S. Steel, but not at the $125/share price.

and consider Smith's contentions to determine whether the trial court properly applied the law.

### Smith's Contentions

■ Smith first argues that the requirement of a guaranteed signature to effect a valid withdrawal constituted a contract of adhesion. This contention was not raised in Smith's opposition to Mobil's motion for summary judgment; therefore, it is not properly before us on appeal. In *Golden Oil Co., Inc. v. Exxon Co., U.S.A.,* 543 F.2d 548 (5th Cir.1976), appellant sought to raise state law affirmative defenses for the first time in his brief to the Court of Appeals. Judge Gee for the Court held that while the District Court could have heard the defenses, appellant had in effect waived them by failing to raise them in opposition to the motion for summary judgment. *Id.* at 551, n. 3. *Accord, Frank C. Bailey Enterprises, Inc. v. Cargill, Inc.,* 582 F.2d 333 (5th Cir. 1978).

■ Smith also claims that Fidelity's exercise of its right to withhold the shares based on the explicit terms of the Tender Agreement constitutes an Abuse of Right. Under Louisiana law, that doctrine has been employed in a limited number of situations where either a party chooses to exercise a legal right with the purpose or motive of harming another person, or where there is an absence of a "serious and legitimate interest in the exercise of [a legal] right worthy of judicial protection." *Housing Authority of the City of Abbeville v. Hebert,* 387 So.2d 693, 696–96 (La.App.1980). Other jurisdictions have invoked the doctrine when the exercise of the right contravenes moral rules, good faith, or elementary fairness, or where the holder of the right exercises it for a purpose other than that for which the right was granted. *Id.* at 697, *see also,* Julio Cueto-Rua, *Abuse of Rights,* 35 La.L.Rev. 965 (1975).

It is true that the District Judge made no express legal conclusions regarding these contentions. However, this Court has never held that a District Court must make reference to every contention of the parties when ruling on a motion for summary judgment unless the underlying holding "would otherwise be ambiguous or inascertainable." *Hanson v. Aetna Life and Casualty,* 625 F.2d 573 (5th Cir.1980); *Erco Industries, Ltd. v. Seaboard Coast Line RR Co.,* 644 F.2d 424, 434 (5th Cir.1981). We do not find the District Court's ruling to be ambiguous: it was based squarely on specific findings of fact and the Court's determination of the law.

First, the Court specifically found that Smith had not alleged any "misconduct on the part of the defendants." This disposes of any claim that Fidelity had an improper motive for withholding the certificates. The remaining criteria upon which a claim of Abuse of Right may be predicated center around policy concerns such as whether the right is worthy of judicial protection, whether its exercise contravenes good morals or elementary fairness, and whether the holder of the right exercises it for the purpose for which it was granted. The Trial Court found that the tender offer provision requiring that tenders and withdrawals be made under guaranteed signature "was included in the agreements to protect investors like Mr. Smith from various types of securities fraud, and is specifically authorized by the Securities & Exchange Commission in Rule 14d–7(d)" [3]. As such, then, the trial judge indicated that policy concerns such as those set forth by Smith were satisfied.

Smith, based upon the legislative history of the SEC Rule, disputes this holding. The Commission stated that the Rule had been revised to "permit the bidder to impose reasonable requirements as conditions precedent to the physical release of withdrawn securities." Absent this revision, the

---

**3.** Rule 14d–7(d) provides, in pertinent part:

... A bidder may impose other reasonable requirements, including certificate numbers and the signing request for withdrawal accompanied by a signature guarantee, as con-

ditions precedent to the physical release of withdrawn securities.

[Adopted in Release No. 16384, 44 Fed.Reg. 70326, November 29, 1979.]

Commission stated, the proposed requirements "would have unduly hampered the bidder's ability to protect itself against fraud in physically releasing the withdrawn securities." *New SEC Rulings,* Fed.Sec. L.R. (CCH) § 82,373, p. 82,591–92 (1979). Even if Smith is correct in arguing that the SEC had allowed requirements such as guaranteed signatures as conditions precedent to the release of withdrawn securities solely to protect the *bidder* (here, Mobil and its agent-depositary, Fidelity) from claims of fraud, we view Fidelity's act as a mere *exercise* of a legitimate right, not an Abuse. We therefore need not reach the issue of the legislative intent of the Rule[4] to conclude that Smith, in failing to allege any misconduct on the part of Mobil or Fidelity, has also failed to demonstrate a violation of any of the policy concerns which would allow us to find an Abuse of Right.

■ We are further swayed by the fact that a Federal Court sitting in diversity is bound to apply state substantive law, and the legal conclusions of a Federal trial judge sitting in that state are "as a rule, entitled to great weight on review." *Avery v. Maremont Corp.,* 628 F.2d 441, 446 (5th Cir.1980); *accord Cole v. Elliott Equipment Co.,* 653 F.2d 1031, 1034 (5th Cir.1981). This deference, coupled with the clear holding of the District Court, leads us to conclude that the doctrine of Abuse of Right does not apply in this case.

■ Finally, Smith urges that under settled doctrines of contract construction[5], the withdrawal provision should be construed against appellees. This contention is plainly without merit. Contracts need only be "construed" where there is some doubt as to the meaning of the language employed. Louisiana courts do not take it upon themselves to "interpret" contracts which are not ambiguous. *Louisiana Pacific Corp. v. Lawton,* 357 So.2d 30, 37 (La. App.1978); *A.A. Home Improvement Co. v. Shane,* 217 So.2d 445, 450 (La.App.1968).

Indeed, every case cited by Smith evidences this threshold requirement in the "construction" process. It warrants repeating that in this case, the provision requiring a guaranteed signature was neither ambiguous nor was there any doubt as to what it said or its meaning. *See* note 1, *supra.* In fact, Smith stated in his deposition that he understood a guaranteed signature was required for both tenders and withdrawals.

### Conclusion

While we might feel an unjudicial sympathy for Smith's loss, we cannot conclude that the District Court erred in granting summary judgment for the defendants. In so concluding, we point out that Smith admits he took a "chance" in posting his withdrawal notice so close to the deadline through the ordinary mails. In choosing to wait until the deadline drew near and not employing a speedier form of transmission, he gambled—and lost, and so he loses here too.

The judgment of the District Court is AFFIRMED.

---

4. Because we find that whatever the intent of the Rule, Smith has failed to state a cause of action, we do not pass upon the District Court's statement as to the legislative intent of the Rule.

5. Smith urges that the contract should be construed against Mobil as the obligor and as the drafter of a printed form contract.