**Mauricio FUNES and Ursula Marisol Funes, Appellants/Cross–Appellees,**

v.

**Ernesto A. VILLATORO, Appellee/Cross–Appellant.**

**No. 14–09–01023–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Sept. 22, 2011.

Rehearing and Rehearing En Banc Overruled Nov. 30, 2011.

Adam Quentin Voyles, John R. Knight, Roger Knight, Jr., Houston, for appellants.

L.T. Bradt, Betsy Lynn Grubbs, Houston, for appellee.

Panel consists of Justices BROWN, BOYCE, and JAMISON.

## OPINION

WILLIAM J. BOYCE, Justice.

Ursula Marisol Funes and Mauricio Funes appeal the trial court's judgment in

favor of Ernesto Antonio Villatoro on numerous grounds. Villatoro also appeals, contending that the trial court erred by failing to award him "attorney's fees for a successful appeal." We affirm in part, reverse and render in part, and reverse and remand in part.

## Overview

Villatoro and his brother-in-law, Elias E. Canales, hosted a daily radio show called "Buenos Dias El Salvador." In 2006, Villatoro offered to broadcast advertisements on the radio show for an El Salvadoran festival organized by the Funeses. A dispute arose when Villatoro and the Funeses could not agree on the rate for these advertisements. Villatoro subsequently told the Funeses he would organize an El Salvadoran festival to be held on the same day as the Funeses' festival.

The Funeses filed assumed name certificates with the county clerk's office for "Festival Guanaco," "Buenos Dias El Salvador," and "Festival Salvadoreno." The Funeses also hired an attorney, who sent a cease-and-desist letter to Villatoro. In the letter, the Funeses advised Villatoro that they had filed assumed name certificates for "three trade names;" demanded that Villatoro refrain from using these registered names; and threatened to sue Villatoro if he failed to comply with the Funeses' demands.

Villatoro and Canales filed separate but identical suits against the Funeses on July 28, 2006. They sought a declaration that the names registered by the Funeses were trade names belonging to Villatoro and Canales; they also alleged claims for libel and tortious interference with prospective and existing contractual relations. The Funeses filed a general denial and a counterclaim for sanctions on September 8, 2006. The trial court sent notices of intent to dismiss for want of prosecution on December 3, 2008.

Villatoro and Canales each filed motions to retain on January 14, 2009. Villatoro and Canales filed a motion to consolidate the two suits on January 23, 2009 and asked the trial court to transfer Villatoro's suit from the 434th District Court to the 400th District Court. The trial court granted the motion to consolidate on January 23, 2009.

Villatoro and Canales filed their second amended petition on April 20, 2009. They alleged claims for libel, tortious interference with prospective and existing contractual relations, and business disparagement; they also sought a declaration that the names registered by the Funeses were in fact trade names belonging to Villatoro and Canales. The Funeses filed a supplemental counterclaim on May 11, 2009, seeking a declaratory judgment and an injunction prohibiting Villatoro and Canales from using the Funeses' registered names.

A three-day jury trial was held on October 20, 2009. The Funeses and Villatoro were present at trial; Canales was not present but was represented by the same attorneys who represented Villatoro.

## Background

Villatoro moved from El Salvador to the United States in 2001; he was employed by a computer company called Comtech Systems as a technology manager and store manager. In January 2004, Villatoro started hosting a one-hour Spanish-language radio show about computers called "El Mundo de los Computadoras." The radio show aired Sundays on Houston's 920 AM station. Comtech paid the radio station for the show's airtime and sold advertising to pay for the airtime.

A few months later in March 2004, Villatoro began hosting two hours on the radio on Sundays. One hour was devoted to computer tips, and one hour was devoted to a radio show Villatoro called "Buenos Dias, El Salvador." Because of a lack of interest in the computer show, Villatoro started devoting the two-hour airtime entirely to hosting the "Buenos Dias, El Salvador" radio show.[1] Canales co-hosted the show. Villatoro continued working for Comtech, which continued paying for the show's airtime and selling advertising.

Villatoro and Canales began publishing a magazine called "Buenos Dias, El Salvador La Revista"[2] in February 2006. Villatoro launched the magazine to promote the radio show and to "help the customers that was [sic] advertising on the show, so they can [sic] have an extra advertising.... Basically, it was all the people that was [sic] advertising on the radio, they were getting it as a package with the magazine." The magazine issues admitted into evidence contained editorials, articles relating to El Salvador and its culture, and advertising for different businesses including the radio show. Villatoro sold subscriptions to the magazine in order to cover the cost; he claimed to have circulated the magazine in all Central American businesses in Harris County and six other counties.

In May 2006, the radio station's owner approached Villatoro to host a daily two-hour morning show Monday through Friday. After a month, the show expanded to a three-hour daily show from 6 a.m. to 9 a.m. The show reached fifteen to twenty thousand listeners in nine counties,[3] and it was also streamed live over the Internet in El Salvador. Villatoro continued to publish the magazine and work for Comtech.

In July 2006, Villatoro offered to broadcast advertisements on the radio show for an El Salvadoran festival organized by the Funeses. Villatoro testified that he met the Funeses in 2004 at one of their restaurants and had once before advertised their festival in 2005. Villatoro testified that Mauricio Funes told him in July 2006 to start broadcasting advertisements for the festival on the radio show. According to Villatoro, Ursula Funes told Villatoro after the advertisements began to run that she could only pay $300 for the advertising because the Funeses had already spent their money advertising on another radio show on the same radio station. Villatoro refused to accept $300 and contended that the advertising he already had provided was worth $1,500.

The Funeses and Villatoro offered conflicting testimony about how the advertising dispute ensued. Mauricio testified that Villatoro asked him if he would like to advertise on Villatoro's radio show. Mauricio testified that he did not know that Villatoro had a show and asked Villatoro to submit a proposal. Mauricio testified that Villatoro brought a proposal to one of the Funeses' restaurants around July 10, 2006, but the Funeses rejected Villatoro's proposal because they preferred advertising their festival on a different radio show with a well-known radio host. Mauricio stated that he offered to spend $600 advertising with Villatoro instead of $2,000 Villatoro had proposed. According to Mauricio, Villatoro became upset and left. Mauricio testified that Villatoro later called him to tell him that he would also organize an El Salvadoran festival on the

---

1. We will refer to "Buenos Dias, El Salvador" as the "radio show" or the "show."

2. We will refer to "Buenos Dias, El Salvador La Revista" as the "magazine."

3. The show reached Harris, Galveston, Fort Bend, Chambers, Waller, Wharton, Matagorda, and Jefferson Counties, and some parts of Louisiana.

same day the Funeses had scheduled their festival to prove that his show was popular with the El Salvadoran community.

The Funeses introduced Villatoro's alleged proposal into evidence as Defendants' Exhibit Two. The advertising proposal was entitled, "Tony Villatoro y su Show;" nothing on the proposal referred to the radio show "Buenos Dias, El Salvador." The proposal listed different advertising packages as an "inauguration promotion" during the month of May. Mauricio testified that Villatoro told him Villatoro "just started a show."

Villatoro denied presenting the proposal to the Funeses in July 2006. He testified that Defendants' Exhibit Two was a proposal he created in 2008 for the Funeses after he changed the name of the radio show from "Buenos Dias, El Salvador" to "El Show de la Tony Villatoro and Junior Canales." Villatoro claimed that the Funeses asked for an advertising quote in 2008 through an unnamed individual, and that he created the proposal in response to that request.

When the Funeses and Villatoro could not resolve their advertising dispute, the Funeses filed assumed name certificates with the Harris County Clerk's Office on July 17, 2006 for "Buenos Dias El Salvador," "Festival Guanaco," and "Festival Salvadoreno." The Funeses testified that they felt threatened by Villatoro's announcement that he would also organize an El Salvadoran festival. Although the Funeses' annual festival is called "El Pupusaton," the Funeses testified that they used El Salvadoran "slogans" such as "Good morning, El Salvador" and "Guanaco, welcome" during their festivals and wanted to ensure that these "slogans" were protected. The Funeses sent a cease-and-desist letter to Villatoro on July 24, 2006, advising Villatoro that they had filed assumed name certificates for "three trade names," demanding that Villatoro refrain from using these registered names, and threatening to sue Villatoro if he failed to comply with their demands.

Villatoro testified that he changed the name of his show "Buenos Dias, El Salvador" to "Tony Villatoro Show"[4] after receiving the Funeses' cease-and-desist letter "to prevent a future problem." He acknowledged scheduling his El Salvadoran festival named "Festival Guanaco" on August 13, 2006—the same day the Funeses scheduled their festival "El Pupusaton." Villatoro claimed that he started organizing his Festival Guanaco in June 2006; started advertising for his festival in July; and pre-paid a band from El Salvador to perform at his festival on July 13, 2006. The Funeses held their festival "El Pupusaton" in the Nassau Bay area and Villatoro held his festival in the Sharpstown area on August 13, 2006.

Villatoro testified that he encountered many difficulties after changing the name of the radio show in July 2006. He stated that "the Salvadoran community was mad at [him] because they said [he] was not proud of being a Salvadoran," causing loss of advertising business. Villatoro testified that "Buenos Dias, El Salvador" had a value in the radio business because he had promoted the name for a long time; the name of the show was a more generic name that "got a lot more coverage." He testified that, after changing the name of the show, he lost at least $20,000 in 2006 and $40,000 in 2007.

Villatoro also stopped publishing the magazine because it was tied to the "Bue-

---

4. Although Villatoro and both trial counsel often referred to the show as the "Tony Villatoro Show," Villatoro later testified that the show was called "El Show de la Tony Villatoro and Junior Canales" between 2006 and 2009.

nos Dias, El Salvador" radio show. According to Villatoro, after the name change, people looked at the magazine as a business that was different from the radio show and the magazine lost its value. Villatoro also testified that he encountered difficulty selling advertising because the Funeses told the community that the names "Buenos Dias, El Salvador" and "Festival Guanaco" belonged to the Funeses.

The radio show started making a profit again in 2008. Villatoro created a marketing agency in July 2008 called TV Promotion and Marketing that handled all advertising for the radio show; Comtech no longer handled the advertising or paid the radio station for airtime. Villatoro testified that he made a profit through his company TV Promotion and Marketing in 2008 because he no longer worked for Comtech. Villatoro organized his second El Salvadoran festival, called "Festival Guanaco 2009," on April 19, 2009, and made a $5,000 profit. After calling the radio show "El Show de la Tony Villatoro and Junior Canales" for almost three years, Villatoro changed the name of the radio show to "Los Hijos de la Madrugada" in July 2009.

At the conclusion of Villatoro's case, the Funeses moved for directed verdict against Villatoro and Canales. The trial court granted the Funeses' motion only as to Canales. After both parties rested, the trial court granted Villatoro's motion for directed verdict against the Funeses on their claims. Villatoro and the Funeses stipulated that "Buenos Dias, El Salvador" and "Festival Guanaco" are trade names; this stipulation is reflected in the jury charge.

The jury returned a verdict finding that (1) the trade names "Buenos Dias, El Salvador" and "Festival Guanaco" belong to Villatoro and do not belong to the Funeses; (2) the Funeses intentionally interfered with Villatoro's "existing or prospective contractual or business relations;" and (3) Villatoro lost profits in the amount of $10,000 as a result of the Funeses' interference. The jury also awarded $22,000 in trial attorney's fees and $3,000 for post-judgment attorney's fees.

The trial court signed a final judgment on October 30, 2009. The Funeses filed (1) a combined motion for judgment notwithstanding the verdict and for new trial; (2) objections and exceptions to the final judgment; and (3) a motion to segregate attorney's fees on November 20, 2009. Villatoro responded to the Funeses' motions and objections on November 23, 2009. The trial court denied the Funeses' requests and signed orders denying the Funeses' motions and objections on November 23, 2009. The Funeses timely filed their notice of appeal on November 30, 2009. Villatoro timely filed his notice of appeal on January 28, 2010.

## Analysis

### I. Sufficiency of the Evidence

The Funeses challenge the sufficiency of the evidence to support the jury's findings in their first four issues on appeal. In their first and second issues, the Funeses contend the evidence is legally and factually insufficient to support the jury's finding that the trade names "Buenos Dias, El Salvador" and "Festival Guanaco" belong to Villatoro. In their third issue, the Funeses argue the evidence is legally and factually insufficient to support the jury's finding that they intentionally interfered with Villatoro's existing or prospective contracts or business relations. In their fourth issue, the Funeses assert the evidence is legally and factually insufficient to support the jury's lost profits finding.

## A. Standard of Review

■ Legal insufficiency challenges may be sustained only when the record discloses one of the following situations: (a) a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence establishes conclusively the opposite of the vital fact. *City of Keller v. Wilson,* 168 S.W.3d 802, 810 (Tex. 2005) (citing Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 Tex. L.Rev. 361, 362–63 (1960)).

■ We must consider evidence in the light most favorable to the verdict and indulge every reasonable inference that would support it. *Id.* at 822. If the evidence allows only one inference, neither jurors nor the reviewing court may disregard that evidence. *Id.* "The traditional scope of review does not disregard contrary evidence in every no evidence review if there is no favorable evidence (situation (a) above), or if contrary evidence renders supporting evidence incompetent (situation (b) above) or conclusively establishes the opposite (situation (d) above)." *Id.* at 810–11. If the evidence at trial would enable reasonable and fair-minded people to differ in their conclusions, then jurors must be allowed to do so. *Id.* at 822. Accordingly, the ultimate test for legal sufficiency always must focus on whether the evidence would enable reasonable and fair-minded jurors to reach the verdict under review. *Id.* at 827. Legal sufficiency review in the proper light must credit favorable evidence if reasonable jurors could do so, and must disregard contrary evidence unless reasonable jurors could not do so. *Id.* The reviewing court cannot substitute its judgment for that of the trier of fact if the evidence falls within this zone of reasonable disagreement. *Id.* at 822.

■ In reviewing factual sufficiency, we must consider and weigh all the evidence. *Golden Eagle Archery, Inc. v. Jackson,* 116 S.W.3d 757, 761 (Tex.2003). We can set aside a verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and manifestly unjust. *Id.*

## B. "Buenos Dias, El Salvador"

In their first issue, the Funeses contend that the evidence is legally and factually insufficient to support the jury's finding that the trade name " 'Buenos Dias El Salvador' is a protectable trade name of Villatoro's radio show." First, the Funeses argue that the title of a radio show is not a trade name but a service mark. In that regard, the Funeses ask this court to determine whether "Buenos Dias, El Salvador" is a trade name despite the parties' trial stipulation to that effect. Second, the Funeses argue that there is insufficient evidence to support the jury's finding that the trade name "Buenos Dias, El Salvador" belongs to Villatoro.

■■ We reject the Funeses' contention that this court should determine whether "Buenos Dias, El Salvador" is a trade name despite the parties' trial stipulation to that effect. In the charge, the jury was instructed as follows: "The parties have stipulated that Festival Guanaco and Buenos Dias El Salvador are trade names." No party objected to this instruction. Absent an objection, the parties are bound by the statements of law contained in the submitted jury charge, even if the statements of law are erroneous. *See L & F Distribs. v. Cruz,* 941 S.W.2d 274, 279 (Tex.App.-Corpus Christi 1996, writ denied) ("When the charge misinforms the

jury about the substantive law, the parties must either object to the improper submission or accept the wording ... as submitted.") (citing *Allen v. Am. Nat'l Ins. Co.,* 380 S.W.2d 604, 608–09 (Tex.1964)); *see also Hirschfeld Steel Co. v. Kellogg Brown & Root, Inc.,* 201 S.W.3d 272, 283 (Tex. App.-Houston [14th Dist.] 2006, no pet.). The Funeses and Villatoro are now bound by the unobjected-to statement contained in the jury charge. *See L & F Distribs.,* 941 S.W.2d at 279; *see also Hirschfeld Steel Co.,* 201 S.W.3d at 283.

We next address whether legally and factually sufficient evidence supports the jury's finding that the trade name "Buenos Dias El Salvador" belongs to Villatoro. The Funeses contend that Villatoro had the burden of proving "the existence of each of the elements of a 'trade name' as submitted to the jury."

Jury Question No. 1 states:

Do you find from a preponderance of the evidence that Buenos Dias El Salvador is a trade name of any of the following persons?

A "trade name" is any designation which (a) is adopted and used by a person to denominate goods which he markets or services which he renders or a business which he conducts, or has come to be so used by others, and (b) through its association with such goods, services or business, has acquired a special significance as the name thereof. A trade name is property and represents the goodwill that has been built up by the energy, time, and money of the user of the name.

Answer "Yes" or "No" as to each of the following:

Ernesto Villatoro *Yes*

Mauricio Funes *No*

According to the Funeses, Villatoro failed to satisfy his burden of proof be-cause there is no evidence or insufficient evidence to establish that (1) the radio show was a business Villatoro owned; and (2) the name "Buenos Dias El Salvador" had a special significance. We first address whether "Buenos Dias, El Salvador" had a special significance because that inquiry is dispositive.

"[A] designation is not a trade name until it has in fact become in the market ... the name for a particular business. This special significance, once acquired, is thereafter its primary meaning in the market, though lexicographically it may have an earlier, different meaning." Restatement (Second) of Torts § 716 cmt. a (1989). The "special significance" of a designation is customarily referred to as the "secondary meaning" of the designation. *Id.* § 716 cmt. b. The phrase "secondary meaning" in this context does not mean a subordinate or rare significance; rather, it means a subsequent significance added to the previous meaning of the designation that becomes in the market its usual and primary significance. *Id.*

Whether a designation has acquired special significance is a question of fact in each case. *Id.* "The issue in each case is whether or not in fact a substantial number of present or prospective purchasers understand the designation, when used in connection with goods, services or a business, not in its primary lexicographical sense, but as referring to a particular person or association." *Id.; cf. Graham v. Mary Kay Inc.,* 25 S.W.3d 749, 754 (Tex. App.-Houston [14th Dist.] 2000, pet. denied) ("A secondary meaning means a trademark identifies a particular producer in the mind of the public. 'This protection stems from the basic idea that a trademark or trade name represents the goodwill that has been built up by the energy, time, and money of the user.' " (citing and quoting *Hanover Mfg. Co. v. Ed Hanover*

*Trailers, Inc.*, 434 S.W.2d 109, 111 (Tex. 1968))); *Douglas v. Taylor*, 497 S.W.2d 308, 310 (Tex.Civ.App.-Houston [1st Dist.] 1973, no writ) ("[T]he true basis of secondary meaning may be said to be that the word or phrase to be given such meaning has been used so long and exclusively by one producer with reference to his articles that the word has come to mean that the article is his product.").

▮▮▮▮▮ Direct and circumstantial evidence may be used to establish secondary meaning. *Zapata Corp. v. Zapata Trading Int'l, Inc.*, 841 S.W.2d 45, 48 (Tex. App.-Houston [14th Dist.] 1992, no writ). "Evidence such as amount and manner of advertising, volume of sales, and length and manner of use may constitute circumstantial evidence relevant to the issue of secondary meaning." *Id.* "These factors combined may prove secondary meaning; together they can establish the necessary link in the minds of consumers between product and source." *Id.*

The evidence here shows that Villatoro co-hosted the radio show "Buenos Dias, El Salvador" with Canales for about 26 months before changing the show's name in response to the Funeses' July 24, 2006 cease-and-desist letter. In January 2004, Villatoro started hosting an hourly computer-themed radio show for his employer Comtech on Sundays in Spanish. In March or April 2004, Villatoro started hosting the "Buenos Dias, El Salvador" radio show for another hour following the computer-themed radio show. Sometime before May 2006, the radio show "Buenos Dias, El Salvador" expanded to two hours on Sundays because of a lack of interest in the computer-themed show. In May 2006, the radio show changed to a daily two-hour and, a month later, to a daily three-hour weekday morning show.

▮▮▮▮ Hosting a one or two-hour radio show under the name "Buenos Dias, El Salvador" once a week for 23 months, and then a daily three-hour show for three months, may qualify as evidence of length of use; it does not qualify as extensive use of the name "Buenos Dias, El Salvador" so as to support secondary meaning. *See id.* (evidence of long and extensive use of a name has been held sufficient to prove a trade name has acquired secondary meaning) (citing *Douglas v. Walker*, 707 S.W.2d 733, 734 (Tex.App.-Beaumont 1986, no writ)).

Even if this evidence did reach the level of extensive use, evidence of other supporting factors is missing. Villatoro testified that the Hispanic community is his audience; he testified that fifteen to twenty thousand people listened to his show daily in eight counties and parts of Louisiana, and that the show is also streamed live via the internet in El Salvador. However, Villatoro did not present any evidence regarding his listenership during the 23 months he was hosting his two-hour show on Sundays. Villatoro also did not present any data regarding how many potential listeners live in the very large and mostly densely populated area the radio show can be heard so as to show the volume and reach of his show.

Villatoro testified that he and Canales started publishing the magazine "Buenos Dias, El Salvador La Revista" in February 2006 to offer their radio show advertisers additional advertising in the magazine and to promote their show. Villatoro introduced several issues of the magazine containing advertisements for different Hispanic businesses and events and for the radio show. The magazine issues containing advertisements for the radio show were dated September 2006, October 2006, January 2007, February 2007, and March 2007—months after Villatoro claimed he had stopped using "Buenos Dias, El Salvador" as the name of the radio show. The

only magazine issue dated March 2006—and prior to the radio show's name change—did not contain any advertisement for the radio show. Villatoro presented no other evidence of radio show advertisements for the relevant time period during which he hosted the show under the name "Buenos Dias, El Salvador."

Villatoro and Canales started publishing the magazine in February 2006; in his answers to interrogatories, Villatoro stated that the combined gross sales for the radio show and the magazine were $20,000 in 2004; $35,000 in 2005; and $50,000 in 2006. An advertisement proposal introduced into evidence reflected that the charge for weekly advertisements on the radio show ranged from $350 to $825. Villatoro did not present any evidence regarding the number of advertisers who advertised on his show or the volume of advertising.

Additionally, Villatoro's testimony demonstrates that he did not necessarily want listeners to associate the radio show with his person:

Q. Okay. As far as who's on the show, who's the person behind the mic, obviously, you don't have the golden mic of Rush Limbaugh, but you've got a mic there, right?

A. Yes, sir.

Q. When its "Buenos Dias EI Salvador," is there as much a tie-in to who the person is behind the mic as there is when it's something that's tied to a name like Rush Limbaugh or Sean Hannity, or something like that in the morning versus, you know, it's the morning show?

A. It's different.

\* \* \*

Q. If you know, from your own experience, when you have a name that is generic like "Buenos Dias EI Salvador," is that easier for you to have substitute hosts than it is when it's tied directly to your name?

A. Yes. With the name as "Buenos Dias EI Salvador," you've got a lot more coverage.

Q. Okay. Is it easier to get substitutes?

A. Yes, sir.

Q. When it's the Tony Villatoro Show, who do they expect to hear?

A. Just myself.

To support his assertion that there is sufficient evidence to support the jury's finding that the trade name "Buenos Dias, El Salvador" belongs to him, Villatoro argues that "[i]t is undisputed that [he] and Canales published a magazine with the name Buenos Dias El Salvador, which had a multi-county circulation. And it is undisputed that the radio show, Buenos Dias El Salvador, began in about March of 2004." The fact that the radio show "began in about March 2004" does not establish that the show acquired a secondary meaning. Also, the fact that the magazine "had a multi-city circulation" does not by itself establish that the radio show acquired a secondary meaning.

Viewing the evidence in the light most favorable to the verdict, we cannot conclude that the evidence supports a finding that in fact a substantial number of present or prospective radio show listeners understand the designation Buenos Dias, El Salvador, when used in connection with the radio show, not in its primary lexicographical sense, but as having secondary meaning. Therefore, we cannot conclude that there is legally sufficient evidence that the designation acquired a secondary meaning or special significance to support the jury's finding that the name of the radio show "Buenos Dias, El Salvador" is Villatoro's trade name.

We sustain the Funeses' first issue.

## C. "Festival Guanaco"

In their second issue, the Funeses argue that (1) "Festival Guanaco" cannot be a trade name because it is a generic description of an event which is not protectable as a trade name; and (2) assuming "Festival Guanaco" can be a trade name, there is insufficient evidence to support the jury's finding that it is Villatoro's trade name.

We reject the Funeses' argument that "Festival Guanaco" cannot be a trade name in this case. The charge instructed the jury as follows: "The parties have stipulated that Festival Guanaco and Buenos Dias El Salvador are trade names." No party objected to this instruction. As we have stated in issue one, absent an objection, the parties are bound by the statements of law contained in the submitted jury charge, even if the statements of law are erroneous. *See L & F Distribs.*, 941 S.W.2d at 279 ("When the charge misinforms the jury about the substantive law, the parties must either object to the improper submission or accept the wording ... as submitted.") (citing *Allen*, 380 S.W.2d at 608–09); *see also Hirschfeld Steel Co.*, 201 S.W.3d at 283. Because the Funeses and Villatoro did not object to a jury instruction that "Festival Guanaco" is a trade name, they are now bound by the statement contained in the jury charge. *See L & F Distribs.*, 941 S.W.2d at 279; *see also Hirschfeld Steel Co.*, 201 S.W.3d at 283.

We agree with the Funeses that legally insufficient evidence supports the jury's finding that the trade name "Festival Guanaco" belongs to Villatoro because the record contains no evidence of secondary meaning and thus no evidence of special significance. Jury Question 3 stated:

> Do you find from a preponderance of the evidence that Festival Guanaco is a trade name of any of the following persons?

A "trade name" is any designation which (a) is adopted and used by a person to denominate goods which he markets or services which he renders or a business which he conducts, or has come to be so used by others, and (b) through its association with such goods, services or business, has acquired a special significance as the name thereof. A trade name is property and represents the goodwill that has been built up by the energy, time, and money of the user of the name.

> Answer "Yes" or "No" as to each of the following:

| | |
|---|---|
| Ernesto Villatoro | *Yes* |
| Mauricio Funes | *No* |

As we have discussed in issue one, the "special significance" of a designation is customarily referred to as the "secondary meaning" of the designation. Restatement (Second) of Torts § 716 cmt. b.

 In an effort to establish secondary meaning, Villatoro testified that he started organizing an El Salvadoran festival called "Festival Guanaco" in June 2006. Villatoro introduced one advertisement for the festival into evidence; the advertisement appeared in the magazine and states "Buenos Dias El Salvador con Tony Villatoro" presents the first "Festival Guanaco." The festival was held on August 13, 2006; about 750 people attended. Villatoro acknowledged that the August 13, 2006 festival was the only festival Villatoro organized under the name "Festival Guanaco."

Although Villatoro testified that he "started talking about this festival on the radio" in July 2006, there is no evidence of the volume and extent of advertisement Villatoro did for the festival on the radio show, in the magazine, or in any other format. Based on the record before us, it appears that Villatoro advertised the festival for about one month and used the

name "Festival Guanaco" for about the same amount of time.

This record does not support a finding that a substantial number of present or prospective Festival Guanaco attendees understand the designation Festival Guanaco as referring to Villatoro. *See Zapata Corp.*, 841 S.W.2d at 48; *see also Test Masters Educ. Servs., Inc. v. Singh*, 46 Fed.Appx. 227, 2002 WL 1940083, at *4 (5th Cir.2002) (per curiam) (unpublished) ("The probative value of advertising depends on the presence of data regarding reach, frequency, and duration."). Therefore, viewing the evidence in the light most favorable to the verdict, we cannot conclude that there is legally sufficient evidence that the designation acquired a secondary meaning or special significance to support the jury's finding that the name "Festival Guanaco" is Villatoro's trade name.

We sustain the Funeses' second issue.

## D. Tortious Interference with Existing Contracts

In their third issue, the Funeses contend that legally and factually insufficient evidence supports the jury's finding that they tortiously interfered with Villatoro's "existing or prospective contracts or business relations."

Because Villatoro agrees on appeal that he did not pursue a claim for tortious interference with prospective business relations, we need address only the jury's finding that the Funeses tortiously interfered with Villatoro's existing contracts with people who previously advertised on the radio show or in the magazine.

■ The elements of tortious interference with a contract are (1) an existing contract subject to interference; (2) a willful and intentional act of interference with the contract; (3) that proximately caused

the plaintiff's injury; and (4) caused actual damages or loss. *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex.2000).

■ To prevail on a tortious interference claim, a plaintiff must present evidence that the defendant interfered with a specific contract. *See Finlan v. Dallas Indep. Sch. Dist.*, 90 S.W.3d 395, 412 (Tex. App.-Eastland 2002, pet. denied). Further, to establish the element of a willful and intentional act of interference, a plaintiff must produce some evidence that the defendant was more than a willing participant and knowingly induced one of the contracting parties to breach its obligations under a contract. *John Paul Mitchell Sys. v. Randalls Food Markets, Inc.*, 17 S.W.3d 721, 730 (Tex.App.-Austin 2000, pet. denied); *see All Am. Tel., Inc. v. USLD Commc'ns, Inc.*, 291 S.W.3d 518, 532 (Tex.App.-Fort Worth 2009, pet. denied). To do so, the plaintiff must present evidence that some obligatory provision of a contract has been breached. *All Am. Tel., Inc.*, 291 S.W.3d at 532.

■ Villatoro testified that he (1) once heard that the Funeses "said something bad about" the radio show; (2) had problems selling advertisements after the Funeses had "gone around saying" that the names "Buenos Dias, El Salvador" and "Festival Guanaco" really belonged to them; and (3) could not name the advertisers who had advertised on the radio show and the magazine and "had dropped off and quit doing business with [him] after [he] had to change the name [Buenos Dias, El Salvador] and stop using it."

Villatoro did not point to any specific contract he had with any advertisers; nor could he point to any specific advertisers who had stopped advertising on his show or in his magazine because of anything the Funeses said or did. Nothing in the rec-

ord establishes that the Funeses knew any of the advertisers who advertised on the show and in the magazine or that advertisement contracts even existed. There is no evidence that the Funeses knowingly induced even one of the advertisers to breach their obligations under a contract they had with Villatoro.

Viewing the evidence in the light most favorable to the verdict, we conclude that there is no evidence establishing the Funeses tortiously interfered with Villatoro's existing contracts.

We sustain the Funeses' third issue.

### E. Lost Profits

In their fourth issue, the Funeses assert that the evidence is legally and factually insufficient to support the jury's finding that Villatoro suffered $10,000 in lost profits because Villatoro did not (1) present sufficient evidence to support a claim for tortious interference with existing contracts or prospective business relations; and (2) prove lost profits "with the requisite specificity."

Because we have determined in issue three that no evidence supports a finding of tortious interference, no award of damages for lost profits is warranted.

We sustain the Funeses' fourth issue.

### II. Injunctive Relief

In their fifth issue, the Funeses contend that the trial court erred as a matter of law by "awarding injunctive relief against the Funeses and declaring that the names at issue belong to Villatoro" because (1) injunctive relief was neither requested nor proper; and (2) Villatoro did not "request a declaration of 'exclusivity.'"

Because we have found in issues one and two that there is legally insufficient evidence to support a finding that the trade names "Buenos Dias El Salvador" and "Festival Guanaco" belong to Villatoro, we conclude that the trial court erred by entering a declaratory judgment that the two trade names "belong exclusively" to Villatoro.

■■■ We further conclude that the trial court erred by "permanently enjoin[ing]" the Funeses from using the trade names "Buenos Dias El Salvador" and "Festival Guanaco." The Uniform Declaratory Judgments Act authorizes a party to obtain supplemental ancillary relief, including a permanent injunction, to enforce a declaratory judgment. *Howell v. Tex. Workers' Comp. Comm'n*, 143 S.W.3d 416, 433 (Tex.App.-Austin 2004, pet. denied); *see* Tex. Civ. Prac. & Rem.Code Ann. § 37.011 (Vernon 2008). Section 37.011 provides that further relief based on a declaratory judgment or decree may be granted whenever necessary or proper. Tex. Civ. Prac. & Rem.Code Ann. § 37.011. The application for relief must be by petition to a court having jurisdiction to grant the relief. *Id.* "If the application is deemed sufficient, the court shall, on reasonable notice, require any adverse party whose rights have been adjudicated by the declaratory judgment or decree to show cause why further relief should not be granted forthwith." *Id.*

Villatoro filed no pleadings in the trial court requesting injunctive relief; nor did the trial court, upon reasonable notice, require the Funeses to show cause why injunctive relief against them should not be granted. Therefore, the trial court erred when it "permanently enjoined" the Funeses "from using the trade names Buenos Dias El Salvador and Festival Guanaco." Additionally, Villatoro conceded during oral argument that the trial court erroneously granted injunctive relief.

We sustain the Funeses' fifth issue.

### III. Attorney's Fees

In their sixth issue, the Funeses argue that the trial court abused its discretion by awarding attorney's fees to Villatoro because (1) "reversal of the awards of declaratory relief to Villatoro necessarily requires reversal of the awards of attorneys' fees;" (2) Villatoro brought a claim for declaratory relief solely for the purpose of obtaining attorney's fees and attorney's fees are not permissible for that purpose under section 37.009; (3) an attorney's fees award is not equitable and just in this case when Villatoro (a) "made no effort to obtain an expeditious resolution of the 'controversy,' " and (b) neither paid nor had an obligation to pay attorney's fees; and (4) the attorney's fees award was not reasonable and necessary since (a) this was "a straightforward case" that only required the services of one attorney and the services and attendance of a second attorney "was unnecessary," and (b) Villatoro did not properly segregate attorney's fees.

In their seventh issue, the Funeses contend that the trial court abused its discretion by awarding Villatoro "unconditional attorneys' fees for post-trial and collection work" because (1) the award does not comport with the jury's conditional award; and (2) "unconditional awards of appellate attorneys' fees are not allowed."

We will first address the Funeses' contention that Villatoro may not recover attorney's fees under the Declaratory Judgments Act because Villatoro's "declaratory judgment claims are simply a vehicle for seeking attorney's fees that would otherwise be unavailable." The Funeses argue that Villatoro's pleaded tort claims for business disparagement[5] and tortious interference were predicated on the fact that "the Funeses filed assumed name certificates for 'Buenos Dias, El Salvador' and

'Festival Guanaco' when they had no right to do so because the phrases were pre-existing trade names of Canales and Villatoro." The Funeses further argue that liability on the tort claims depended in part "on the existence and ownership of the alleged trade names." According to the Funeses, the declaratory judgment claims are duplicative of the pleaded tort claims.

Under the Uniform Declaratory Judgments Act (UDJA), "[a] court of record within its jurisdiction has power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." Tex. Civ. Prac. & Rem.Code Ann. § 37.003(a) (Vernon 2008). The UDJA's purpose is "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations; and it is to be liberally construed and administered." Id. § 37.002(b). The enumerations in sections 37.004 and 37.005 do not limit or restrict the exercise of the general powers conferred in this section in any proceeding in which declaratory relief is sought and a judgment or decree will terminate the controversy or remove an uncertainty. Id. § 37.003(c).

 In any proceeding under this chapter, the court may "award costs and reasonable and necessary attorney's fees as are equitable and just." Id. § 37.009. A party cannot use the UDJA to settle disputes already pending before the court. BHP Petroleum Co. v. Millard, 800 S.W.2d 838, 841 (Tex.1990) (orig. proceeding). Nor can a party use the UDJA to obtain otherwise impermissible attorney's fees. MBM Fin. Corp. v. Woodlands Operating Co., 292 S.W.3d 660, 669 (Tex. 2009). It is an abuse of discretion to

---

5. At trial, Villatoro admitted that he failed to prove his claim for business disparagement and withdrew the claim. We therefore do not

address any argument relating to a claim for business disparagement.

award attorney's fees under the UDJA when the statute is relied upon solely as a vehicle to recover attorney's fees. *City of Houston v. Texan Land & Cattle Co.*, 138 S.W.3d 382, 392 (Tex.App.-Houston [14th Dist.] 2004, no pet.).

Villatoro's second amended petition provides:

### Facts Common to All Causes of Action

5. Plaintiffs are well-known in the Latin community and enjoy an excellent reputation therein. Plaintiffs have business relations, contracts and prospective contracts in that community and in the Anglo community. Defendants negligently published statements that were defamatory concerning the plaintiffs. These statements were false and many were made with actual malice. These false statements tend to injure plaintiffs' reputation so as to lower the plaintiffs in the estimation of the community or to deter third persons from associating or dealing with the plaintiffs, and/or they tend to expose plaintiffs to public hatred, contempt, ridicule, or financial injury, and/or to impeach plaintiffs' honesty, integrity, or virtue. These statements also affect plaintiffs injuriously in their office, profession, or occupation.

6. Through their false and defamatory statements, Defendants have interfered with ongoing and prospective contractual relations that Plaintiffs have and enjoy. Defendants have also caused confusion in the Latin community by claiming to own trade names that belong to or are associated with Plaintiffs.

7. Defendants have also attempted to appropriate unto themselves trade names that are associated with and belong to Plaintiffs.

### First Cause of Action—Libel

8. Plaintiffs sue defendants, jointly and severally, for the damage to their reputation caused by their defamatory statements. This defamation was done with malice, entitling Plaintiffs to have and recover punitive damages, for which they now also sue.

### Second Cause of Action—Tortious Interference

9. In the alternative, but without waiving the foregoing, defendants have tortiously interfered with Plaintiffs' existing and prospective contractual relations. Plaintiffs had existing and prospective contracts, defendants were aware of same and intentionally interfered with same and thereby caused Plaintiff damage, for which they now sue.

10. This tortious interference was committed with malice, entitling Plaintiffs to have and recover punitive damages, in an amount to be set by the trier of fact, for which they now sue.

### Third Cause of Action—Declaratory Judgment

11. In the alternative, but without waiving the foregoing, Plaintiffs sue defendants for a declaratory judgment that they, in fact, own the trade names and common law trademarks that defendants now claim to have registered or to own. Pursuant to the declaratory judgment act, Plaintiffs sue for reasonable attorney's fees for having to bring this declaratory judgment action.

Nothing in Villatoro's pleadings supports the Funeses' contentions that Villatoro's declaratory judgment claims are duplicative of his tortious interference claim or predicated on the fact that "the Funeses filed assumed name certificates for 'Buenos Dias, El Salvador' and 'Festival Guanaco' when they had no right to do so because the phrases were pre-existing trade names of Canales and Villatoro." These pleadings do not support a conten-

tion that liability on the tort claims depended in part "on the existence and ownership of the alleged trade names."

Further, the Funeses themselves sought a declaratory judgment that they owned the trade names "Buenos Dias, El Salvador" and "Festival Guanaco." The trial court's final judgment contains a declaration that the Funeses have no interest in the two trade names "and that any assumed name certificates filed by" the Funeses for the two trade names are void; the Funeses do not challenge that declaration on appeal. Accordingly, we reject the Funeses' argument that Villatoro brought a declaratory judgment claim "solely for the purpose of obtaining attorney's fees." We conclude that recovery of attorney's fees is permissible under § 37.009 in this case.

Next, we address the Funeses' assertion that "reversal of the awards of declaratory relief to Villatoro necessarily requires reversal of the awards of attorneys' fees."

As we have stated above, the UDJA permits the trial court to "award costs and reasonable and necessary attorney's fees as are equitable and just." Tex. Civ. Prac. & Rem.Code Ann. § 37.009. The award of attorney's fees and costs in a declaratory judgment action is within the trial court's discretion and is not dependent upon a finding that a party substantially prevailed. *Chase Home Fin., L.L.C. v. Cal West. Reconveyance Corp.*, 309 S.W.3d 619, 634 (Tex.App.-Houston [14th Dist.] 2010, no pet.) (citing *Barshop v. Medina*, 925 S.W.2d 618, 637–38 (Tex. 1996)). Because our disposition of this case on appeal substantially affects the trial court's judgment, remand is warranted so that the trial court can address what attorney's fees, if any, should be awarded to Villatoro under the UDJA. *Id.* As stated above, Villatoro obtained declaratory judgment that was not challenged on appeal

and has not been disturbed. Because our disposition on appeal does not leave Villatoro entirely without relief, a reversal and rendition regarding attorney's fees is not proper. *See City of Houston v. Harris Cnty. Outdoor Adver. Ass'n*, 732 S.W.2d 42, 56 (Tex.App.-Houston [14th Dist.] 1987, no writ) (stating that it is an abuse of discretion to award attorney's fees to a party who is not entitled to declaratory relief).

We remand the issue of whether to award attorney's fees under the UDJA to Villatoro and the reasonable and necessary amount of any such attorney's fees, if awarded, to the trial court for further proceedings. We resolve the Funeses' sixth issue in their favor to this extent. Because of our disposition of this issue, it is unnecessary to address the Funeses' remaining arguments relating to attorney's fees in issues six and seven.

## IV. Villatoro's Cross–Point

In his sole cross-point, Villatoro argues that there is no evidence to support "the jury's refusal to award any attorney's fees" for successful appeals. Villatoro argues that his expert witness, David Carp, provided direct and unequivocal evidence "for attorney's fees for a successful appeal," and that the Funeses did not present any evidence to controvert Carp's testimony. Villatoro contends that, "[a]lthough it could have rationally concluded that, in light of the amount involved and the results to be obtained, a reasonable fee award was less than the full amount sought, no evidence supported the jury's refusal to award any attorney's fees."

A no evidence point is preserved through one of the following: (1) a motion for instructed verdict; (2) a motion for judgment notwithstanding the verdict; (3) an objection to the submission of the issue to the jury; (4) a motion to disregard

the jury's answer to a vital fact issue; or (5) a motion for new trial. *T.O. Stanley Boot Co., Inc. v. Bank of El Paso,* 847 S.W.2d 218, 220 (Tex.1992). Villatoro did not file any motion challenging the jury's finding on appellate attorney's fees. Nor did he attempt to challenge the sufficiency of the jury's finding in his response to the Funeses' post-trial motions. Therefore, we do not address Villatoro's no evidence challenge to the jury's finding on appellate attorney's fees. *See id.; Graves v. Tomlinson,* 329 S.W.3d 128, 142 n. 2 (Tex.App.-Houston [14th Dist.] Feb. 16, 2010, pet. filed).

We overrule Villatoro's cross-point.

## Conclusion

Having concluded that there is no evidence to support the jury's finding that "Buenos Dias, El Salvador" and "Festival Guanaco" are Villatoro's trade names, we reverse the trial court's judgment awarding declaratory relief to Villatoro in that regard and render judgment that Villatoro take nothing with respect to his declaratory judgment claim that the trade names "Buenos Dias, El Savador" and "Festival Guanaco" belong to Villatoro.

Having concluded that the trial court erroneously granted a permanent injunction against the Funeses enjoining the Funeses from using the trade names "Buenos Dias, El Salvador" and "Festival Guanaco," we reverse the trial court's permanent injunction and render judgment against Villatoro with respect to this permanent injunctive relief.

Having concluded that there is no evidence to support Villatoro's tortious interference claim, we reverse the trial court's judgment awarding damages to Villatoro and render judgment that Villatoro take nothing on his tortious interference claim.

Having concluded that the trial court erroneously entered declaratory judgment that "Buenos Dias, El Salvador" and "Festival Guanaco" are Villatoro's trade names, we reverse the trial court's attorney's fees award and remand the issue of whether to award attorney's fees under the UDJA, and the reasonable and necessary amount of any such attorney's fees if awarded, to the trial court for further proceedings.

In all other respects, we affirm the trial court's judgment.