# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 11, 2025

Lyle W. Cayce
Clerk

No. 24-50385

Cloud49, L.L.C.,

*Plaintiff—Appellant*,

*versus*

Rackspace Technology, Incorporated; CapGemini America, Incorporated,

*Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:22-CV-229

_____

Before King, Ho, and Ramirez, *Circuit Judges*.

Per Curiam:[*]

Cloud49, L.L.C. ("Cloud49") appeals the dismissal of its lawsuit alleging that tortious conduct during the bidding process for a public contract resulted in the award of the contract to a competitor. We AFFIRM.

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 24-50385

I

Cloud49 is a cloud computing company that often acts as a middleman between public cloud providers like Microsoft and Amazon and customers using cloud infrastructure. For five years, Cloud49 provided public cloud management services to the Texas Department of Information Resources ("DIR"), developing software, processes, and procedures to streamline the public cloud process for state agencies.

Due to the expansion of cloud computing, by 2019, "the scope, size, and complexity [of DIR's cloud management needs] [exceeded] the core capacities of any single vendor." DIR issued "Requests for Offers" for seven data services, including a Public Cloud Manager, and it retained Capgemini America, Inc. ("Capgemini") to manage the new vendors. Capgemini participated at each stage of the bidding process for the Public Cloud Manager contract.

A

On October 25, 2019, DIR issued its first Request for Offer on the Public Cloud Manager Contract. It advised prospective vendors that they would be graded on: (1) technical solution and service delivery; (2) experience and past performance; (3) transition; and (4) pricing. Each category was allocated a certain number of points. Cloud49 and Rackspace Technology ("Rackspace") both submitted proposals. Cloud49 outscored Rackspace in all four categories, with a total score of 100 points; Rackspace scored 81.95 points. Cloud49's bid was also about $80,698,261 lower than Rackspace's bid.

DIR issued a second Request for Offer on the Public Cloud Manager Contract, and Cloud49 and Rackspace submitted revised proposals. Cloud49 again outscored Rackspace in all four categories with a score of 100 points,

2

while Rackspace's score fell to 80.20 points. The price gap between their bids also widened.

DIR held clarification meetings with both bidders to further explain its requirements. Cloud49 and Rackspace "were allowed to submit questions, requests for data, and requests for meetings with DIR or incumbent vendors in order to eliminate any assumptions that remained in their Response [to the Request for Offer]."

DIR issued a third Request for Offer. Cloud49's scores in the "experience and past performance" and "pricing" categories decreased, and its total score fell to 92.34 points, while Rackspace's total score rose to 92.59 points. Rackspace's bid also fell to about $5,320,630 less than Cloud49's final bid.

DIR selected Rackspace's proposal, and DIR and Rackspace executed the contract on May 7, 2020.

B

DIR held a debriefing session with Cloud49, during which it provided a document summarizing its decision to award the contract to Rackspace. The document noted that the parties' "experience and past performance" scores, which were carried over from the first round to the second round of bidding, had been based on the parties' written responses alone. In the third round, however, the scores also included input from phone interviews.

Cloud49 filed a bid protest, arguing that the award failed to comply with the applicable procurement statutes and rules and to follow the criteria for best value set out in the requests for offers. It noted that it led the overall scoring in the first two rounds, and DIR's representative and others had assured it during the debriefing that its references were "extremely positive." DIR denied Cloud49's bid protest, explaining that, as it "followed

its iterative, progressive procurement process, it became evident [that Cloud49]'s experience for similar sized projects was limited to existing DCS services." Rackspace, however, "provided references across different projects where [it] served as the prime contractor." Rackspace also improved its proposal as it learned more about the Public Cloud Manager contract; Cloud49 did not. It found "no evidence that DIR deviated from stated evaluation criteria at any time during the procurement."

Cloud49 submitted an administrative appeal, arguing that DIR had not investigated its allegations. DIR denied Cloud49's appeal as "nothing more than another blatant attempt at skirting more state procurement rules to get another chance at a fresh appeal before the DIR board."

C

Cloud49 sued Capgemini and Rackspace.[1] Its Third Amended Complaint asserted a claim for tortious interference with prospective business relations against Capgemini. It alleged that a Capgemini executive, Kenneth Sinclair, "falsely attributed [errors to Cloud49] for the purpose of causing DIR to choose Rackspace over Cloud49."

As for Rackspace, Cloud49 asserted Defend Trade Secrets Act ("DTSA"), tortious interference with prospective business relations, and tortious interference with existing contracts claims against it. It alleged that Rackspace had made false statements about managing public cloud contracts to boost its "experience and past performance" scores. Although Cloud49 cooperated during the transition of the Public Cloud Manager position to

---

[1] Cloud49 originally filed this lawsuit in state court. After it filed for bankruptcy, Cloud49 removed the lawsuit to bankruptcy court. It then moved to withdraw the reference to bankruptcy court, and the district court granted the motion.

No. 24-50385

Rackspace, Rackspace allegedly "acquired [Cloud49's] trade secrets through [Cloud49's] former employees, which Rackspace hired [after the transition] to obtain such confidential information." These former employees had non-disclosure agreements, but Rackspace "willfully and intentionally interfered with those contracts by inducing [Cloud49's] former employees to breach those obligations."[2]

Capgemini and Rackspace separately moved for summary judgment. The district court granted both motions and dismissed Cloud49's claims.

II

This court "review[s] a [district court's] grant of summary judgment de novo." *Flowers v. Wal-Mart Inc.*, 79 F.4th 449, 452 (5th Cir. 2023) (citing *Nationwide Mut. Ins. Co. v. Baptist*, 762 F.3d 447, 449 (5th Cir. 2014)). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In reviewing the facts, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (citing *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554–55 (1990); *Liberty Lobby, Inc.*, 477 U.S. at 254; *Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 696, n.6 (1962)). A non-movant cannot defeat summary judgment with "speculation, improbable

_____

[2] Cloud49 also brought conspiracy claims against both parties and a fraud claim against Capgemini, but it conceded that it had no evidence to support these claims, and they were dismissed.

inferences, or unsubstantiated assertions." *Lawrence v. Fed. Home Loan Mortg. Corp.*, 808 F.3d 670, 673 (5th Cir. 2015) (internal quotation marks omitted) (quoting *Likens v. Hartford Life & Accident Ins. Co.*, 688 F.3d 197, 202 (5th Cir. 2012)). Rather, the non-movant "must point to specific evidence in the record demonstrating a material fact issue concerning each element of his claim." *Mitchell v. Mills*, 895 F.3d 365, 370 (5th Cir. 2018).

## III

Cloud49 argues that the district court "improperly weighed evidence and improperly made credibility determinations" in granting summary judgment on its claim against Capgemini for tortious interference with prospective business relations. It urges several "reasons" why a jury could conclude that Sinclair intended to interfere with the bidding process by blaming Cloud49 for its mistakes, citing a declaration from one of its executives, Jerry Gerault.

To prevail on a claim for tortious interference with prospective business relations, the plaintiff must establish that (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result. *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013).

"Evidence proffered by one side to . . . defeat a motion for summary judgment will inevitably appear 'self-serving,'" *Dallas/Fort Worth Int'l Airport Bd. v. INet Airport Sys., Inc.*, 819 F.3d 245, 253 n.14 (5th Cir. 2016), but "self-serving" evidence cannot be discounted on that basis alone,

*Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 161 (5th Cir. 2021). Self-serving declarations, like all summary judgment evidence, must be "made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). And these facts must be particularized, not vague or conclusory. *Guzman*, 18 F.4th at 161 (citing *Kariuki v. Tarango*, 709 F.3d 495, 505 (5th Cir. 2013)). Broad legal or factual assertions in an affidavit that are unsupported by specific facts are generally held to be conclusory. *See id.*[3]

Gerault's declaration is not competent evidence because it is "conclusory, vague, [and] not based on personal knowledge." *Id.* For example, Gerault states that Capgemini had a financial incentive to harm Cloud49 because "the amount of transition (and thus the amount of fees for Capgemini for assisting with the transition) would likely be lower if Cloud49 was awarded the [Public Cloud Manager] Contract." He offers no specific facts to support his claim, however. *Kariuki*, 709 F.3d at 505. Likewise, Gerault states that he does "not see how [Sinclair] could have been mistaken about who was responsible for the work at issue" based on his "many years in the industry." This "conclusory, self-serving statement" is also insufficient to preclude summary judgment. *BMG Music v. Martinez*, 74 F.3d 87, 91 (5th Cir. 1996).

Cloud49 also argues that Sinclair's story has "changed over time," but Sinclair has consistently maintained that he does not recall attributing

---

[3] *See also Chavers v. Exxon Corp.*, 716 F.2d 315, 318 (5th Cir. 1983) (statement that a defendant's "trade[,] business and occupation is the location, production and sale of oil and gas" was conclusory because defendant's status under Louisiana law depended on other, unstated, facts); *Fowler v. S. Bell Tel. & Tel. Co.*, 343 F.2d 150, 154 (5th Cir. 1965) (defendants' sworn, conclusory statements that they were acting within scope of employment did not support summary judgment where unsupported by specific facts).

errors to Cloud49. Sinclair's declaration does not concede making such a statement, but states that if he did, he did so in error. Likewise, when asked during his deposition, he did not remember "commenting . . . about the tagging and tracking issue" in a meeting. Sinclair did not answer when asked whether other attendees' recollections of that meeting were incorrect.

Pointing to an email exchange between Cloud49 and Capgemini, Cloud49 also argues that Sinclair's statement was intentional because "other Capgemini personnel repeated the false statement in an email sent later during that same meeting." The email concerned a contract between Atos and Cloud49, not the Requests for Offer or DIR's Public Cloud Manager contract.

Cloud49 also argues that the district court erred because it relied on "the absence of evidence for Cloud49's separate fraud claim against Capgemini." The district court noted that "Cloud49 cannot prove its fraud claim in response to Capgemini's motion, and it presents no other evidence in support—only that Sinclair's statement was false, but no evidence that it was fraudulent." Even if it conflated Cloud49's abandoned fraud claim—based on allegations that Capgemini requested information about Cloud49's staffing and operations to then provide to Rackspace—with its tortious interference claim, the district court did not base its conclusion on this point alone.

Even drawing all reasonable inferences in Cloud49's favor, Cloud49 failed to raise a genuine issue of material fact as to whether Sinclair intended to disrupt the bidding process. The district court did not err in granting summary judgment for Capgemini on Cloud49's tortious interference with prospective business relations claim.

IV

Cloud49 also argues that the district court improperly weighed evidence and made credibility determinations in granting summary judgment on its claims against Rackspace. We disagree.

A

With respect to its claim under the DTSA, Cloud49 argues that there was "conflicting evidence" about whether Rackspace obtained Cloud49's trade secret information through improper means. It contends that the district court credited the testimony of its former employee, John White, that Cloud49 authorized him to disclose trade secret information" to Rackspace, and "discredited" Gerault's testimony that White was not authorized to disclose trade secret information to Rackspace.

The DTSA is a federal law that allows trade secret owners to sue in federal court for misappropriation. 18 U.S.C. § 1836 *et seq*. To succeed on this claim, a plaintiff must demonstrate that "(1) a trade secret existed, (2) the trade secret was acquired through a breach of a confidential relationship or discovered by improper means, and (3) the defendant used the trade secret without authorization from the plaintiff." *CAE Integrated, L.L.C. v. Moov Techs., Inc.*, 44 F.4th 257, 262 (5th Cir. 2022) (quoting *GE Betz, Inc. v. Moffitt-Johnston*, 885 F.3d 318, 325 (5th Cir. 2018)).

In his deposition, White testified that Cloud49 directed him to share documents with Rackspace to "mak[e] sure the customers [did not] take a hit" and "make this as smooth a transition as possible." He did not state that Cloud49 authorized him to turn over "trade secret information." Gerault's declaration acknowledges that "Cloud49 did assist Rackspace with the transition" and "Cloud49 employes ... shared information with Rackspace." Gerault also noted that he "[did] not know the specifics of what

any of [Cloud49's former employees] may have shared" with Rackspace. Cloud49 has not identified a conflict in the evidence.

Even though Cloud49 claims that Rackspace "induced" White to breach his non-disclosure agreement, it points to no record evidence showing that Rackspace acquired trade secret information through "improper means." Gerault's general statement that White was not permitted to share trade secret information with Rackspace is not evidence that Rackspace obtained trade secret information through "theft, fraud, unauthorized interception of communications, [or] inducement of or knowing participation in a breach of confidence." *Astoria Indus. of Iowa, Inc. v. SNF, Inc.*, 223 S.W.3d 616, 636 (Tex. App.—Fort Worth 2007, pet. denied), *abrogated on other grounds by Dall. Symphony Ass'n, Inc. v. Reyes*, 571 S.W.3d 753 (Tex. 2019). The Cloud49 documents he shared with Rackspace were distributed prior to his termination from Cloud49, during the transition from Cloud49 to Rackspace, and at Cloud49's direction. Indeed, Gerault stated that he had no evidence that White shared Cloud49's trade secret information with Rackspace.

Even drawing all reasonable inferences in Cloud49's favor, Cloud49 failed to raise a genuine issue of material fact as to whether Rackspace acquired its trade secrets through a breach of a confidential relationship or through improper means. The district court properly granted summary judgment for Rackspace on Cloud49's DTSA claim.

B

Cloud49 brings its tortious interference with existing contract claim against Rackspace "[i]n addition to, or in the alternative to its trade secret misappropriation claim," alleging that "Rackspace tortiously interfered with the contractual confidentiality obligations of the former Cloud49 employees that Rackspace hired." It again argues that the district court "chose to

believe Mr. White's testimony and not Mr. Gerault's testimony regarding what Mr. White was authorized to do."

Texas law distinguishes between tortious interference with an existing contract and tortious interference with business relations. *Nix v. Major League Baseball*, 62 F.4th 920, 934 (5th Cir. 2023), *cert. denied*, 144 S. Ct. 165 (2023). To succeed on a tortious interference with existing contract claim, a plaintiff must demonstrate: (1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damages or loss. *Prudential Ins. Co. of Am. v. Fin. Rev. Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000). "The 'act of interference' element generally requires demonstration that the defendant 'knowingly induced one of the contracting parties to breach its obligations under a contract.'" *Nix*, 62 F.4th at 934 (quoting *Funes v. Villatoro*, 352 S.W.3d 200, 213 (Tex. App.—Houston [14th Dist.] 2011, pet. denied)).

We have held that, to succeed on a tortious interference with existing contract claim, the defendant's conduct must have resulted in "some obligatory provision of a contract having been breached." *WickFire, L.L.C. v. Woodruff*, 989 F.3d 343, 354 (5th Cir. 2021), *as revised* (Mar. 2, 2021) (cleaned up) (quoting *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 749 (5th Cir. 2019)).[4] The record does not contain a non-disclosure agreement for White or any other former Cloud49 employee. Rackspace points to two

---

[4] *See also El Paso Healthcare Sys., Ltd. v. Murphy*, 518 S.W.3d 412, 421–22 (Tex. 2017) ("To prevail on a claim for tortious interference with existing contract, Murphy had to present evidence that El Paso Healthcare induced West Texas OB to 'breach the contract,' . . . and thus interfered with Murphy's 'legal rights under the . . . contract[.]'" (internal citations omitted)).

unsigned copies of the "Cloud49 Standard Non-Disclosure Agreement," but neither of these agreements pertain to White.

As for Cloud49's tortious interference with existing contract and DTSA claims, it also cites no evidence showing that Rackspace interfered with White's non-disclosure agreement. *See Nix*, 62 F.4th at 934. The record shows that White shared Cloud49 documents with Rackspace prior to his termination from Cloud49, during the transition from Cloud49 to Rackspace, and at Cloud49's direction. Rackspace's bid noted that it would need access to incumbent personnel to "[r]etain legacy knowledge and maintain continuity of the customer experience." Rackspace's statement that it uses non-disclosure agreements and that these agreements are common are not evidence that Rackspace interfered with White's agreement.

Even drawing all reasonable inferences in Cloud49's favor, Cloud49 failed to identify a genuine issue of material fact as to whether Rackspace intentionally interfered with White's non-disclosure agreement. The district court properly granted summary judgment for Rackspace on Cloud49's tortious interference with existing contract claim.

## C

As for its tortious interference with prospective business relations claim, Cloud49 notes that the Requests for Offer stated that part of the Public Cloud Manager's duties would include supporting remote file services like CTERA devices. One of Rackspace's proposals stated: "[w]ith a roster of over 3,000 Texas-based employees, we have certified staff that could transition to this project."[5] According to Cloud49, this was an intentional

---

[5] Rackspace did not address this allegation in its summary judgment motion, but Cloud49 raised it in its response, and Rackspace discussed it in its reply. Cloud49 also raised it in its opening brief. Although review is limited to the summary judgment record that was before the district court, "[t]he Court is 'not limited to the district court's reasons

misrepresentation of Rackspace's capabilities because "Rackspace did not have any experience with or personnel to handle the CTERA portion of the contract." It claims that Rackspace's false and deceptive representations constituted "independently tortious conduct . . . whether DIR relied upon the representation or not."

In its Requests for Offer, DIR asked prospective vendors to provide a Staffing Plan, which included "[a] contingency plan that shows the ability to add more staff, if needed, to meet the Project's due date(s)." Rackspace submitted its "Staff Augmentation Contingency Plan," which contained the allegedly false and deceptive representations. It stated: "[a]s Rackspace begins to onboard new [Public Cloud Manager] Customers that require additional staffing, we will rely on our proven processes to recruit and retain personnel." Rackspace's statements about its "roster of over 3,000 Texas-based employees" that it could transition to the project on either "a temporary or permanent basis depending on the need" address Rackspace's potential to scale up to meet increased demand; they do not concern CTERA.[6] Cloud49 has identified no evidence showing that Rackspace made false or deceptive representations about its capabilities.

Even drawing all reasonable inferences in Cloud49's favor, Cloud49 failed to raise a genuine issue of material fact. The district court properly granted summary judgment for Rackspace on Cloud49's tortious interference with existing contract claim.

---

for its grant of summary judgment and may affirm the district court's summary judgment on any ground raised below and supported by the record.'" *Lyles v. Medtronic Sofamor Danek, USA, Inc.*, 871 F.3d 305, 310 (5th Cir. 2017) (quoting *Rogers v. Bromac Title Servs., L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014)).

[6] This alleged misrepresentation could not have caused Cloud49's injuries because it was submitted as part of Rackspace's original bid in the first round, which Rackspace lost.

No. 24-50385

V

The district court's judgment is AFFIRMED.